

Rhonda H. Wills*
*Licensed in NY, CA, and TX

1776 Yorktown Street, Suite 570 • Houston, TX 77056
(p) 713.528.4455 • (f) 713.528.2047

October 8, 2020

*VIA ECF*
Hon. Gregory H. Woods
United States District Court

Re:   *The Pullman Group, LLC v. Ronald Isley, et al.*; Case No. 1:20-cv-07293-GHW

Dear Judge Woods:

We represent Defendants Ronald Isley, Rudolph Isley, The Estate of O'Kelly Isley, Jr., Isley Brothers, L.L.C., Isley Brothers Royalty Venture I SPC, Inc., Three Boys Music Corporation, Bovina Music Inc., T-Neck Records, Inc., and Triple Three Music, Inc. ("the Isleys") in this matter. Pursuant to Rule 2(C)(i) of your Individual Rules of Practice in Civil Cases, we respectfully submit this pre-answer request for a pre-motion conference on a Rule 12(b)(6) Motion to Dismiss.

This breach of contract case is based on seven identical Engagement Letters each dated July 20, 1999 ("Engagement Letters").[1] Plaintiff The Pullman Group, LLC ("Pullman") alleges that the Isleys breached the Engagement Letters (paragraphs 2 and 7) by negotiating a sale of their music assets to EMI in 2017 and to Defendant Reservoir Media Management, Inc. ("Reservoir") in 2018 without paying a commission to Pullman.[2] Pullman admits that it had no involvement in either sale.[3] Pullman has sued the Isleys for breach of contract and Reservoir for tortious interference, and seeks to foreclose on a purported contractual lien in the Engagement Letters.

As discussed below, this lawsuit should be dismissed for at least the following reasons: (1) the Engagement Letters expired on November 2, 2007; (2) the Engagement Letters do not give Pullman an "exclusive right of sale;" and (3) the Engagement Letters do not grant Pullman the right to receive a commission on an asset sale in which Pullman had no involvement.

FACTUAL BACKGROUND.

The Isley Brothers is a Grammy Award-winning music group that started in the 1950's as a vocal trio consisting of brothers Ronald Isley, Rudolph Isley and O'Kelly Isley, Jr. Ronald Isley filed for bankruptcy on April 2, 1997 in Los Angeles, California.[4] During the pendency of the bankruptcy, Pullman entered into the Engagement Letters with the Isleys on July 20, 1999,[5] in order to structure a securitization/bond deal backed by the Isleys' record masters, music publishing and the writer's share of their music catalog ("music assets").

---

[1] The seven identical Engagement Letters are attached to the Original Complaint ("OC") as Exhibits A1-A7 and are between Pullman and seven of the Isley Defendants: Ronald Isley, Rudolph Isley, The Estate of O'Kelly Isley, Jr., Three Boys Music Corporation, Bovina Music Inc., T-Neck Records, Inc., and Triple Three Music, Inc.

[2] OC at ¶¶ 1-3.

[3] OC at ¶ 2 (in 2017, "the Isley Brothers, secretly behind Pullman's back, negotiated an agreement to sell valuable exclusive Musical Assts to EMI"); OC at ¶ 3 (in 2018, "the Isley Brothers, secretly behind Pullman's back, sold valuable exclusive Musical Assets to Reservoir"); OC at ¶ 60 (in August 2017, "the Isley Brothers secretly reached an agreement with EMI on the essential terms of an approximate eight figure sale, without advising Pullman or allowing Pullman to participate."); OC at ¶ 74.

[4] U.S Bankruptcy Court for the Central District of California (Los Angeles) in Case No. 2:97-bk-22489-BR.

[5] Engagement Letters, OC at Exs. A1-A7.

Letter to Judge Woods
October 8, 2020
Page 2 of 3

The Engagement Letters have a *specified expiration* in the first paragraph:

> Engagement Period.  The term of the Engagement (the "Engagement Period")
> shall commence on the date Owner executes this letter … (the "Commencement
> Date") and ***shall expire unless extended by mutual agreement of the parties
> hereto, upon the expiration of Ron Isley's Federal bankruptcy proceeding***.[6]

Ronald Isley's federal bankruptcy proceeding ended on ***November 2, 2007***.[7]  Accordingly, the
Engagement Letters expired over a decade ago and well before the 2017 and 2018 asset sales at
issue here.  Pullman was engaged in 1999 to structure a securitization program; obtain a line of
credit; compile a due diligence package; and perform due diligence.[8] As contemplated by the
Engagement Letters, in 2000 Pullman structured a securitization deal for the Isleys secured by the
Isleys' music assets through the issuance of bonds (known as "Pullman Bonds").[9] The Pullman
Bonds were fully redeemed and paid off by the Isleys in 2011, and Pullman was paid "seven
figures" in fees for this securitization/bond transaction.[10] The Isleys engaged in no further business
with Pullman and owe nothing to Pullman for their own asset sales in 2017 and 2018.

## ENGAGEMENT LETTERS EXPIRED OVER A DECADE AGO.

Courts in New York, including this Honorable Court, have dismissed cases in which the
contract that was allegedly breached has expired.[11]  In *International Technologies*, two companies
entered into a contract in which the plaintiff would help the defendant negotiate to buy a third
company.[12]  The contract expired before the purchase of the third company happened.  Four years
later, the defendant bought the third company.[13]  The plaintiff sued for breach of contract.  The
defendant moved to dismiss, and this Court granted the motion because the contract had expired.[14]

Like *International Technologies*, here the Isleys have no obligation to pay Pullman for
asset sales over a decade after the parties' contract expired. As previously discussed, the
"Engagement Period" ended on ***November 2, 2007***.[15] Pullman disingenuously argues that
paragraph 7 extends the term of the agreement.[16] Paragraph 7 includes the "same terms and
conditions outlined" in the rest of the agreement, including the applicable "Engagement Period."

---

[6] Engagement Letters at ¶ 1 (emphasis added).

[7] *See* U.S Bankruptcy Court for the Central District of California (Los Angeles) in Case No. 2:97-bk-22489-BR.

[8] Engagement Letters at ¶ 3.

[9] OC at ¶¶ 57-58

[10] OC at ¶¶ 57-58.

[11] *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.,* 157 F. Supp. 3d 352, 363-364 (S.D.N.Y. 2016) (J. Woods); *see also*, *Kropschot Fin. Servs., Inc. v. Balboa Capital Corp.*, No. 11-cv-8609, 2012 WL 1870697, at *5 (S.D.N.Y May 21, 2012) (breach of contract dismissed because alleged breach occurred months after contract expired); *Diversified Media Brokerage Partners v. Upscale Commc'ns., Inc.*, No. 07-cv-4285, 2010 WL 5068936, at *1 (E.D.N.Y. Dec. 6, 2010) (same); *Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 485 (S.D.N.Y. Sept. 30, 2008) (breach of contract cannot occur after contract has expired); *Sevel Arg., S.A. v. GMC*, 46 F. Supp. 2d 261, 268 (S.D.N.Y. 1999) (same).

[12] *Int'l Techs.*, 157 F. Supp. 3d at 357.

[13] *Int'l Techs.*, 157 F. Supp. 3d at 357.

[14] *Int'l Techs.*, 157 F. Supp. 3d at 363-364.

[15] *Supra* n.6-7.

[16] *See* OC at ¶ 109; *see also* Engagement Letters at ¶ 7 ("***Such refinancing will be on the same terms and conditions outlined herein.  This clause shall be interpreted to include all future financings*** during the greater of owner's life or two future financing periods in addition to the initial financing contemplated by this agreement.") (emphasis added).

Letter to Judge Woods
October 8, 2020
Page 3 of 3

Further, paragraph 7 specifically contemplates future "<u>financings,</u>" which is inapplicable here.  It is undisputed that Pullman complains about the Isleys' <u>asset sales</u>, not a "financing" transaction.[17]  Because the Engagement Letters expired on November 2, 2007—some 10 years before the alleged breaches occurred—Pullman's claims should be dismissed.

**PULLMAN DOES NOT HAVE AN "EXCLUSIVE RIGHT OF SALE."**

Pullman contends that the Engagement Letters in paragraphs 2 and 7 grant it an "exclusive right of sale" with respect to the Isleys' music assets, which it argues precluded the Isleys from selling their own music assets without involving Pullman.[18]  This argument also fails.

The Second Circuit has made clear that "[u]nder New York law, 'a contract giving rise to an exclusive right of sale must clearly and expressly provide that a commission is due upon sale by the owner or exclude the owner from independently negotiating a sale.'"[19]  Neither of the two elements is present here.  Paragraph 2 provides that "***[d]uring the Engagement Period,*** neither owner nor anyone acting on its behalf shall, other than through Pullman, undertake any activities with regard to Transactions."  As previously noted, the "Engagement Period" expired over 10 years ago. Further, there is no clear and express provision in paragraph 2 or 7 excluding the Isleys from independently negotiating a sale of their own music assets, nor is there a provision that Pullman will be paid a commission if the Isleys negotiate their own sale.  In fact, the Engagement Letters expressly provide that Pullman will be compensated <u>only</u> for performing "Services" under the agreement.[20]  Paragraph 7 mentions "future financings," but again does not preclude the Isleys from their own sale nor provides that Pullman will be paid if it is not involved in the sale.[21]

**PULLMAN IS NOT ENTITLED TO A COMMISSION ON A SALE THAT IT DID NOT BROKER.**

As noted by this Honorable Court in *International Technologies*, "in order to be entitled to a commission, it is well-established that 'a broker must show that he brought the parties together at mutually acceptable terms within the period of his employment.'"[22]  Here, Pullman admits that it was not involved at all with the 2017 or 2018 asset sales.[23]  Accordingly, because Pullman did not bring the parties together at mutually acceptable terms, it is axiomatic that it is not entitled to a commission on the sale.  Moreover, as previously discussed, the 2017 and 2018 sales about which Pullman complains occurred well after the expiration of the Engagement Letters.

For all the foregoing reasons, we respectfully request a pre-motion conference for a Rule 12(b)(6) Motion to Dismiss, and that the Court dismiss this matter in its entirety.

Respectfully submitted,
*/s/ Rhonda H. Wills*
WILLS LAW FIRM, PLLC

cc:  Counsel of Record (Via ECF)

---

[17] OC at ¶¶ 2, 3, 60 and 74.
[18] OC at ¶¶ 2, 3, 60 and 74.
[19] *Dominick & Dickerman LLC v. Deutsche Oil & Gas AG*, 756 Fed. App'x 58, 61 (2d Cir. 2018) (quoting *Morpheus Capital Advisors LLC v. UBS AG*, 23 N.Y.3d 528, 535, 992 N.Y.S.2d 178, 15 N.E.3d 1187 (N.Y. 2014)).
[20] Engagement Letters at ¶¶ 3, 5.
[21] Engagement Letters at ¶ 7.
[22] *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 363 (S.D.N.Y. 2016) (J. Woods) (quoting *Bashant v. Spinella*, 67 A.D.2d 1100, 415 N.Y.S.2d 146, 147 (N.Y. App. Div. 1979)).
[23] OC at ¶¶ 2, 3, 60 and 74.