# LEVIN-EPSTEIN & ASSOCIATES, P.C.

420 Lexington Avenue • Suite 2525 • New York, New York 10170
T: 212.792-0046 • E: Joshua@levinepstein.com

October 12, 2020

***Via Electronic Filing***
The Honorable Judge Gregory H. Woods
United States District Court, Southern District of New York
500 Pearl St.
New York, NY 10007-1312

      **Re:**    *The Pullman Group, LLC v. Isley et al*
              **Case No.: 1:20-cv-07293-GHW**

Dear Honorable Judge Woods:

      This law firm represents plaintiff The Pullman Group, LLC (the "Plaintiff" or "Pullman") in the above-captioned matter. Pursuant to Your Honor's Individual Motion Practice Rules 1(A) and 2(C)(i), this letter respectfully serves as a response to the Isley Defendants'[1] October 8, 2020 letter [D.E. 33] requesting a pre-motion conference (the "October 8th Letter") on their anticipated motion to dismiss Plaintiff's complaint filed on September 8, 2020 (the "Complaint"), pursuant to Fed.R.Civ.P. 12(b)(6).

      The fundamental problem with the October 8th Letter is that the Isley Defendants urge on this Court a tortuous interpretation of the operative date for the expiration of Pullman's exclusive right to arrange future financings, which is clearly set forth in paragraph 7 of the Engagement Letters.[2] Paragraph 7 of the Engagement Letters provides that Pullman's exclusive rights with respect to refinancings/asset sales **continued for the original plus the greater of the life of any "Owner" under the Engagement Letters or two "future financing periods," or, at least, through 2061**. *Complaint,* ¶41, fn. 15.[3] Under New York law, contracts are construed to "give[ ] a reasonable and effective meaning to all terms" and not to leave "a part unreasonable or of no effect. *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 338 (S.D.N.Y. 2020). Thus, the Isley Defendants' argument that the Engagement Letters have expired is patently meritless.

---

[1] The Isley Defendants are defined as Ronald Isley, Rudolph Isley, The Estate of O'Kelly Isley, Jr., Isley Brothers, L.L.C., Isley Brothers Royalty Venture I SPC, Inc., Three Boys Music Corporation, Bovina Music Inc., T-Neck Records, Inc., and Triple Three Music, Inc.

[2] The seven identical Engagement Letters each dated July 20, 1999 between Plaintiff and the Isley Defendants ("Engagement Letters") are attached to the Complaint as Exhibits A1-A7. It should respectfully be noted that Pullman has highlighted certain portions of the Engagement Letter in "Exhibit AA-1."

[3] The term of Pullman's original financing securitization for the Isley Defendants under the Engagement Letters was twenty (20) years, commencing in 2001. Thus, Pullman's exclusive rights with respect to refinancing/asset sales continued for the original plus the greater of the life of any "Owner" under the Engagement Letters or two "future financing periods," or, at least, through 2061. Ronald and Rudolph are both still alive. There are two main types of financing available for companies: debt and equity. Debt is a loan that must be paid back often with interest, but it is typically cheaper than raising capital because of tax deduction considerations. Equity does not need to be paid back, but it relinquishes ownership stakes to the shareholder. Both debt and equity have their advantages and disadvantages. Most companies use a combination of both to finance operations. *Complaint*, at ¶ 44; *see also*, https://www.investopedia.com/terms/f/financing.asp

As set forth more fully below, the Isley Defendants cannot come close to satisfying the legal threshold for dismissal of the Complaint on the grounds that the Engagement Letters have expired, because paragraph 7 of the Engagement Letters is still operative.[4]

**I.    The Isley Defendants' Reliance on *International Techs.* is Misplaced and Easily Distinguishable from the Instant Case**

The Isley Defendants principal reliance on this Court's decision in *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*[5] is legally and factually flawed because a side-by-side comparison of the respective agreements clearly shows that, in contra distinction to *International Techs.*, the temporal dimension for expiration set forth in paragraph 7 of the Engagement Letters survived the expiration of the other provisions of the Engagement Letters.  Paragraph 7 of each of the Engagement Letters provides, in relevant part, as follows:

> 7.   Refinancing or Asset Sale(s). Pullman is granted the exclusive right, at its sole discretion, to refinance any future transaction(s) or asset sale(s) for owner upon future recoupment of the Securities.  Such financing or asset sale shall be at a minimum transaction size of the initial transaction contemplated by this agreement. Such refinancing will be on the same terms and conditions outlined herein.  **This clause shall be interpreted to include all future financings during the greater of owner's life or two future financing periods in addition to the initial financing contemplated by this agreement**.

*Complaint*, ¶¶ 39, 71, 108, 109 (emphasis added); *Engagement Letters*, ¶ 7 (emphasis added).  By the very terms of paragraph 7 of the Engagement Letters, Pullman's exclusive rights with respect to refinancings/asset sales **continued for the original plus the greater of the life of any "Owner" under the Engagement Letters or two "future financing periods," or, at least, through 2061**. *Complaint,* ¶ 41, fn. 15.[6]  Of critical importance, the agreement at issue in *International Techs.* did not have the equivalent of the clause contained in paragraph 7 of the Engagement Letters.

The operative agreement in *International Techs*. (the "International Techs. Agreement")[7] in paragraph 8, entitled "Term", stated, in relevant part, as follows:

> This agreement shall be effective from the date hereof and shall continue in effect for a period of 12 months thereafter…

---

[4] *See, e.g.*, *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 2020 WL 1330662, at *8 (S.D.N.Y. 2020) (holding that "[a]t the motion to dismiss stage, dismissal of a complaint on the grounds that the statute of limitations has expired is appropriate only if the complaint clearly shows the claim is out of time.") (citations omitted).
[5] 157 F. Supp. 3d 352, 363 (S.D.N.Y. 2016) (hereafter, "*International Techs.*").
[6] The term of Pullman's original financing securitization for the Isley Defendants under the Engagement Letters was twenty (20) years, commencing in 2001. Thus, Pullman's exclusive rights with respect to refinancing/asset sales continued for the original plus the greater of the life of any "Owner" under the Engagement Letters or two "future financing periods," or, at least, through 2061. Ronald and Rudolph are both still alive.
[7] A copy of the International Techs. Agreement is attached hereto as "**Exhibit A**" for the Court's convenience.

Subsequently, the International Techs. Agreement had been amended to include a 1-page amendment (the "International Techs. Amendment")[8] that provided, in relevant part, as follows:

> Except as specifically included herein, all terms and conditions of the [International Techs. Agreement] will continue to apply to between the parties.

Even though the agreements at issue here and in *International Techs*. are fundamentally different, the Isley Defendants urge on the Court the precedential effect of *International Techs*. This is wrong.[9]

### II. Pullman Does Have Exclusivity Rights Under Paragraph 7 to Arrange All Future Financings

The Isley Defendants' argument that Pullman does not have any exclusivity rights under paragraph 7 of the Engagement Letters is patently frivolous. Paragraph 7 of the Engagement Letters provides Pullman with the "**exclusive right**", at its sole discretion, to refinance any future transaction(s) or asset sale(s) for owner upon future recoupment of the Securities…[10]

### III. Pullman is Entitled to Damages Under the Clear Terms of the Engagement Letters

Contrary to the Isley Defendants' argument, Pullman is entitled to its fee in full pursuant to ¶5(c) of the Engagement Letters. *Complaint* ¶¶ 67, 70. Under the controlling New York law, in the context of exclusive sales agreements, the broker is entitled to receive his commission on a sale negotiated by the principal without the broker, regardless of whether the broker was involved in procuring the buyer. *See, e.g., Rachmani Corp. v. 9 East 96th St. Apt. Corp.*, 211 A.D.2d 262 (1st Dept. 1995). Paragraphs 93 through 98 of the Complaint clearly demonstrates that the controlling New York state law provides Pullman its full fees under the Engagement Letters, plus contractual damages.

### IV. Conclusion

For the reasons set forth above, the relief requested in the Isley Defendants' October 8th Letter should be denied in its entirety. Thank you, in advance, for your time and consideration.

---

[8] A copy of the International Techs. Amendment is attached hereto as "**Exhibit B**" for the Court's convenience.

[9] In *International Techs*., this Court held that the words "all terms," in the International Techs. Amendment, functioned to relate back the expiration date contained in the International Techs. Agreement, *i.e.*, "a period of 12 months thereafter," **because the plaintiff had no alternative explanation for another expiration period**. 157 F. Supp. 3d 352, 363 (S.D.N.Y. 2016). But that is not the case here. *See, e.g.*, 2020 WL 1330662, at *8 (S.D.N.Y. 2020). Accordingly, the Isley Defendants reliance on *Int'l Techs.* is misplaced.

[10] [D.E. 1-2] [Engagement Letters] at ¶ 7 [emphasis added].

                                Respectfully submitted,

                                **LEVIN-EPSTEIN & ASSOCIATES, P.C.**

                                By:  */s/ Joshua Levin-Epstein*
                                      Joshua Levin-Epstein
                                      420 Lexington Avenue, Suite 2525
                                      New York, NY 10170
                                      Tel. No.:  (212) 792-0046
                                      Email: Joshua@levinepstein.com

VIA ECF: All Counsel                      *Attorneys for Plaintiff*