**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
The Pullman Group, LLC,

        *Plaintiff*,      Case No.: 1:20-cv-07293

    -against-        Hon. Gregory H. Woods

Ronald Isley, Rudolph Isley, Reservoir Media
Management, Inc., The Estate of O'Kelly Isley,
J.R., Isley Brothers, L.L.C., Isley Brothers Royalty
Venture I SPC, Inc., Three Boys Music
Corporation, Bovina Music Inc., T-Neck Records,
Inc., Triple Three Music, Inc. and John Doe
Corporations 1-5,

        *Defendants*.

-------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE PULLMAN GROUP, LLC'S**
**MOTION FOR SANCTIONS PURSUANT TO**
**FED.R.CIV.P. 26(g)(3) AND 37(c)(1) AND MOTION TO COMPEL**

**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Joshua Levin-Epstein, Esq.
Jason Mizrahi, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Plaintiff*

Dated: New York, New York
   March 22, 2021

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................................................. iii

**PRELIMINARY STATEMENT** ........................................................................................ 1

**RELEVANT BACKGROUND** ........................................................................................... 3

   I.   Plaintiff's First Set of Discovery Requests ....................................................... 3

   II.   The Isley Defendants' Obstruction of Discovery ............................................ 5

   III.  The Isley Defendants' Responses to Plaintiff's Interrogatories and Document Demands Concealed Material Information Related to the Identity of Highly Relevant Non-Party Witnesses ....................................................................................... 8

**LEGAL ARGUMENT** ...................................................................................................... 11

   I.   Sanctions are Mandatory Under Fed.R.Civ.P. 26(g)(3) ................................ 11

   II.   Sanctions are Warranted Under Fed.R.Civ.P. 37(c)(1) ................................ 11

**CONCLUSION** ................................................................................................................. 14

## **TABLE OF AUTHORITIES**

**Cases**

*Borsanyi v. Huggins*,
    2019 WL 4911188 (E.D.N.Y. 2019)............................................................... 14

*Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir. 1979)......................................................................... 13

*In re September 11th Liab. Ins. Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007) .................................................................. 13

*Kiobel v. Royal Dutch Petroleum Co.*,
    2009 WL 1810104 (S.D.N.Y. 2009)............................................................... 12

*Kosher Sports, Inc. v. Queens Ballpark Co., LLC*,
    2011 WL 3471508 (E.D.N.Y. 2011)............................................................... 12

*Lodge v. United Homes, LLC*,
    787 F. Supp. 2d 247 (E.D.N.Y. 2011) ........................................................... 14

*Markey v. Lapolla Indus., Inc.*,
    2015 WL 5027522 (E.D.N.Y. 2015)............................................................... 12

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest, Employees Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) .................................................................. 12

*Scottsdale Ins. Co. v. United Indus. & Constr. Corp.*,
    2014 WL 12834839 (E.D.N.Y. 2014).............................................................. 13

**Statutes**

Fed.R.Civ.P. 26(g)(1)........................................................................................ 11

Fed.R.Civ.P. 26(g)(3)........................................................................................ 12

Fed.R.Civ.P. 37(c)(1)..................................................................................... 13, 14

Plaintiff the Pullman Group LLC ("Pullman"), by and through the undersigned counsel, Levin-Epstein & Associates, P.C., respectfully submits this Memorandum of Law, together with the declaration of Joshua Levin-Epstein, Esq., (the "Epstein Decl.") and the exhibits annexed thereto, in support of Plaintiff's motion (the "Motion") for an Order (i) awarding attorneys' fees, costs[1], and sanctions against the Isley Defendants[2], and their counsel, pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 26(g)(3) and 37(c)(1); (ii) compelling the Isley Defendants to produce documents concerning non-party witnesses Shukat and Geffen (all as defined below), and (iii) compelling the Isley Defendants to supplement their responses to Plaintiff's interrogatories, and as grounds thereto respectfully states as follows:

## PRELIMINARY STATEMENT

This is a straightforward motion for sanctions against the Isley Defendants and their counsel for the violation of Fed.R.Civ.P. 26(g)(3) and 37(c)(1).

As of the date of this Motion, the Isley Defendants have failed to supplement and correct interrogatory responses that clearly omitted material information that goes to the heart of the instant dispute. The Isley Defendants omitted the identities of four (4) non-party witnesses that assisted the Isley Defendants' sale of their Musical Assets[3] to defendant Reservoir Media Management, Inc. ("Reservoir").  In their interrogatory responses, the Isley Defendants failed to

---

[1] Should the Court find favorably for Plaintiff, Plaintiff respectfully requests an opportunity to submit billing records for Plaintiff's attorneys' fees, costs and expenses.

[2] Defendants Ronald Isley ("Ronald"), Rudolph Isley ("Rudolph"), The Estate of O'Kelly Isley, J.R. (the "O'Kelly Estate"), Isley Brothers, L.L.C. ("Isley Brothers LLC"), Isley Brothers Royalty Venture I SPC, Inc. ("Royalty Venture"), Three Boys Music Corporation ("Three Boys"), Bovina Music Inc. ("Bovina"), T-Neck Records, Inc. ("T-Neck"), Triple Three Music, Inc. ("Triple Three") are collectively referred to herein as the "Isley Defendants."

[3] The term "Musical Assets" includes all of the Isley Brothers' right, title and interest in certain musical compositions and recordings of the Isley Brothers songs as set forth in the Engagement Letters, that were successfully securitized into the Pullman Bonds (as defined below) in the Isley Brothers' first transaction under the Engagement Agreement, exclusively authorized Pullman for the structure of a securitization program for the issuance of securities or asset sales backed by the Isley Brothers' musical assets, record masters, music publishing, and writers' share.

disclose the identities of four (4) non-party witnesses – each of whom sought a finders' fee and/or a consultancy fee in connection with the Reservoir Transaction[4]. Presumably to circumvent Plaintiff's Engagement Letters[5] with the Isley Defendants, the Isley Defendants instructed at least two (2) non-party witnesses to have Reservoir pay the finders' fee/consultancy fee, based on documentary evidence.  Plaintiff only discovered the Isley Defendants' material omissions when Reservoir made a partial document production on March 11, 2021.  On this basis alone, sanctions are mandatory under Fed.R.Civ.P. 26 for the Isley Defendants' failure to list the four (4) material and highly relevant non-party witnesses in their responses to Plaintiff's interrogatories.

Further aggravating matters, under threat of sanctions by this Court, the Isley Defendants, for the first time since Plaintiff served document demands on December 22, 2020, finally produced documents on March 18, 2021, which are woefully deficient. The Isley Defendants' belated production did not include any documents concerning the non-party witnesses at issue here and the Isley Defendants have produced only a handful of documents concerning Shukat (as defined below).  This is stonewalling, plain and simple.

Accordingly, for the reasons set forth more fully below, sanctions are warranted under Fed.R.Civ.P. 26(g)(3) and 37(c)(1), and the Court should respectfully compel the Isley Respondents to supplement their interrogatory responses and document production.

---

[4] "Reservoir Transaction" refers to the Isley Defendants' 2018 agreement to sell Musical Assets to Reservoir. [*See* Dckt. No. 47 at ¶ 3].

[5] Plaintiff's Amended Complaint [Dckt. No. 47], states in pertinent part:

> "This action arises out [of] Pullman's contractual agreements (the "Engagement Letters") with the Isley Brothers that provided Pullman with the exclusive contractual right to refinance or sell valuable music copyrights and other assets related to a large number of musical compositions and songs created by the musical group known as The Isley Brothers."

[*See* Dckt. No. 47 at ¶ 1].

## RELEVANT BACKGROUND

**I.     Plaintiff's First Set of Discovery Requests**

On December 22, 2020 at 8:12 a.m. (EST), shortly following the entry of the Case

Management Plan and Scheduling Order [Dckt. No. 59], Plaintiff, via electronic service, served

the Isley Defendants with Plaintiff's First Request for the Production of Documents to the Isley

Defendants (the "Isley FRPD") and Plaintiff's First Set of Interrogatories to the Isley Defendants

(the "Isley Rogs.", and together with the Isley FRPD, the "Plaintiff's First Set of Discovery

Requests to the Isleys"). True and correct copies of the Isley FRPD and Isley Rogs. are annexed

to the Epstein Decl. as Exhibits "A" and "B", respectively.

The Isley FRPD requested, *inter alia*, the following:

**DOCUMENT REQUEST NO. 3:**

All documents and communications concerning any of the events concerning or
relating to Plaintiff's above-captioned Action, by, among, and between the Isley
Defendants, on the one hand, and the following Persons, on the other hand:

…
**(iv)   Shukat Arrow Hafer & Herbsman LLP ("Shukat"), including but not
limited to, Michael Frisch, Esq., and Jonas Herbson, Esq.**;
…
(vii)  **Any and all Persons that assisted the Isley Defendants regarding
financings/asset sale(s) in connection and/ or concerning the Musical
Assets**; and…

**DOCUMENT REQUEST NO. 5**:

All documents and communications concerning any of the events concerning or
relating to the Isley Defendants relationship with Shukat Hafer & Herbsman LLP
("Shukat"), including but not limited to, engagement agreement(s) (including
metadata), invoices, and payment receipts documents prepared, developed, or
reviewed by Shukat.

*See Epstein Decl*. at ¶ 3 [Ex. A at pp. 9-10] [Isley FRPD] (emphasis added).

Thus, Plaintiff requested that the Isley Defendants produce, *inter alia*: (i) documents in the possession and control of their former attorneys, Shukat Hafer & Herbsman LLP ("Shukat")[6]; and (ii) documents concerning the Isley Defendants' sale of their musical assets.

As set forth more fully below, as of the date of this Motion, the Isley Defendants have not made a meaningful document production, nor provided a meaningful privilege log concerning documents in the Isley Defendant's control with respect to Shukat's possession of relevant, non-privileged documents.

The Isley Defendants' responses to the Isley Rogs. have also violated the discovery protocols contained in Fed.R.Civ.P. 26(g)(3) and 37(c)(1). The Isley Rogs. requested, *inter alia*, the following:

**INTERROGATORY NO. 4**

Identify each person likely to have knowledge or information concerning or relating to the Reservoir Transaction (as such term is defined in the Amended Complaint).

**INTERROGATORY NO. 6**

Identify each person likely to have knowledge or information concerning or relating to the Reservoir Asset Sale Agreement (as such term is defined in the Amended Complaint).

**INTERROGATORY NO. 8**

Identify each person likely to have knowledge or information concerning or relating to any and all prospective and potential buyers of the Isley Defendants' Musical Assets. The term "Musical Assets" includes all of the Isley Defendants' right, title and interest in certain musical compositions and recordings of the Isley Defendants' songs as set forth in the Engagement Letters (as defined in the Amended Complaint), that were successfully securitized into the Pullman Bonds (as defined in the Amended Complaint).

---

[6] As set forth in Plaintiff's Amended Complaint filed on November 17, 2020 [Dckt No. 49]:

"The Isley Brothers hired Shukat for the purpose of the equivalent of investment banking services to market the EMI Transaction and the Reservoir Transaction and/or the Isley Brothers' Musical Assets."

*Id*. at ¶ 53. Thus, there are material, non-privileged documents in Shukat's possession.

**INTERROGATORY NO. 9**

Identify each person likely to have knowledge or information concerning or relating to any and all Persons that assisted the Isley Defendants regarding financings/asset sale(s) in connection and/ or concerning the Musical Assets. The term "Musical Assets" includes all of the Isley Defendants' right, title and interest in certain musical compositions and recordings of the Isley Defendants' songs as set forth in the Engagement Letters (as defined in the Amended Complaint), that were successfully securitized into the Pullman Bonds (as defined in the Amended Complaint).

*See Epstein Decl*. at ¶ 4 [Ex. B at pp. 9-8] [Isley Rogs.].

Thus, the Isley Rogs. requested information concerning the identities of each person that had knowledge or information concerning or relating to the Reservoir Transaction (as such term is defined in the Amended Complaint).

As set forth more fully below, as of the date of this Motion, the Isley Defendants' responses to the Isley Rogs. completely omitted material information concerning the identities of Matt Finkelstein ("Finkelstein"), Ross Charap ("Charap"), Jeremy Geffen ("Geffen") and Courtney Barnes ("Barnes"), all of whom requested finders' fees in connection with the Reservoir Transaction.

**II.     The Isley Defendants' Obstruction of Discovery**

By email dated January 22, 2021, Plaintiff's counsel emailed the Isley Defendants' attorneys inquiring about the status of the Isley Defendants' responses to the Isley FRPD and the Isley Rogs., which were due on January 21, 2021. *See Epstein Decl*. at ¶ 5 [Ex. C] [January 22, 2021 Email]. Later that day, on January 22, 2021, the Isley Defendants' counsel responded, by email, that the Isley Defendants' responses to the Isley FRPD and Isley Rogs. had been served via certified mail. *See Epstein Decl*. at ¶ 6 [Ex. D] [January 22, 2021 Email Response].

In their responses, the Isley Defendants objected to each and every request in the Isley FRPD and Isley Rogs. on the basis of, *inter alia*, improper service. A true and correct copy of the

Isley Defendants' responses to Plaintiff's First Set of Discovery Requests (the "Isley Defendants' Responses") is attached to the Epstein Aff. as Exhibit "E".

The Isley Defendants' objections to the Isley FRPD and Isley Rogs. based on (wrongfully) alleged improper service is sharp practice. *See Epstein Decl*. at ¶ 7 [Ex. E] [Isley Defendants' Responses].

Between the service of Plaintiff's First Set of Discovery Requests, made on December 22, 2020, and the Isley Defendants' Responses, made on January 22, 2021, the Isley Defendants had never raised an objection to Plaintiff's electronic method of service, even though Plaintiff had served its Fed.R.Civ.P. 26(a) disclosure vie electronic service , had a "meet-and-confer" on January 11, 2021, and multiple emails had been exchanged. *See Epstein Decl*. at ¶ 8 [Ex. F] [Examples of Email Exchanges]. Thus, the Isley Defendants had sandbagged Plaintiff.

For the sake of good offices, Plaintiff re-served Plaintiff's First Set of Isley Discovery Requests, via certified mail, and entered into an electronic service agreement (the "Electronic Service Agreement"), pursuant to Fed.R.Civ.P. 5 by email on February 9, 2021.  A copy of said agreement is attached to the Epstein Decl. as Exhibit "G".

By letter dated February 16, 2021, Plaintiff served a deficiency letter (the "First Deficiency Letter") on the Isley Defendants in connection with the Isley Defendants' Responses.  The First Deficiency Letter included a detailed explanation of the Isley Defendants' violation of the discovery protocols. A copy of the First Deficiency Letter is attached to the Epstein Decl. as Exhibit "H".  The Isley Defendants never responded to the First Deficiency Letter.

Of critical importance, the Isley Defendants did not heed Plaintiff's First Deficiency Letter. On March 1, 2021, the Isley Defendants served their supplemental responses to Plaintiff's First Set of Discovery Requests (the "Isley Defendants' Supplemental Response").

The Isley Defendants, once again, categorically re-objected to each and every request in the Isley FRPD and Isley Rogs., and did not produce a single document in response to Plaintiff's First Set of Discovery Requests. *See Epstein Decl.* at ¶ 10 [Ex. I] [Isley Defendants' Supplemental Responses]. Thus, despite Plaintiff's efforts to avoid Court intervention, through the First Deficiency Letter, the Isley Defendants continued to stonewall Plaintiff.

The Isley Defendants' stonewalling necessitated Court intervention. On March 10, 2021, Plaintiff filed a letter for a pre-motion conference to compel the Isley Defendants to produce responsive documents, in accordance with Your Honor's Individual Motion Practice Rule (2)(C)(ii) and Fed.R.Civ.P. 37(a). [Dckt. No. 66].[7] The Isley Defendants failed to respond to Plaintiff's request for a joint submission.[8] By Order dated March 12, 2021 [Dckt No. 67], the Court granted Plaintiff's application and set a hearing for March 17, 2021.

On March 11, 2021, Plaintiff served another deficiency letter (the "Second Deficiency Letter") on the Isley Defendants in connection with the Isley Defendants' Supplemental Response to the Isley RFPD and Isley Rogs. A copy of said letter is attached to the Epstein Decl. as Exhibit "J".

By Order dated March 18, 2021, the Court ordered as follows:

In response to Plaintiff's anticipated motion to compel, the Isley Defendants represented that they could serve supplemental discovery responses by March 18, 2021. The Isley Defendants are directed to serve such responses by that date. If

---

[7] The March 10, 2021 pre-motion conference letter states, in pertinent part:

"[T]he undersigned and counsel to the Isley Defendants have held "meet and confers" on the following dates: January 11, 2021, February 3, 2021, March 1, 2021, and March 8, 2021. The parties have also exchanged dozens of emails concerning discovery between December 22, 2020 and March 8, 2021. The undersigned has made every conceivable accommodation to move this along without Court intervention."

[*See* Dckt. No. 66 at p. 3]. This is stonewalling, plain and simple.

[8] *See id.* at p. 1, n.1 ("Counsel for the Isley Defendants failed to timely respond to Plaintiff's request to complete their portion of this letter, made on March 8, 2021 at 12:20 p.m. (EST). The undersigned also emailed the Isley Defendants' counsel this morning at 8:47 a.m. (EST). No response was given.")

Plaintiff still wishes to file a motion to compel after review of the Isley Defendants'
supplemental responses, Plaintiff may file that motion without first filing a pre-
motion letter. . .

[Dckt. No. 71].

Following the hearing, on March 18, 2021, the Isley Defendants' served, for the third time,

responses, *to wit*: the Amended and Second Supplemental Responses and Objections to Plaintiff's

First Set of Requests for the Production of Documents (the "Isley Defendants' Second

Supplemental Responses"). *See Epstein Decl*. at ¶ 13 [Ex. K] [Isley Defendants' Second

Supplemental Responses]. The Isley Defendants' Second Supplemental Responses included a

short privilege log pursuant to S.D.N.Y. Local Civil Rule 26.2. *Id*.

Contemporaneously with the Isley Defendants' service of the Isley Defendants' Second

Supplemental Responses, the Isley Defendants served 1,035 pages of documents, which marked

the first time the Isley Defendants had actually produced a document.  The majority of those

documents consisted of agreements and contracts.  The fundamental problem with the Isley

Defendants' production is that there is not a meaningful production of documents from the Shukat

firm, nor a meaningful privilege log.

As of the date of this Motion, the Isley Defendants have not supplemented the Isley Rogs.,

despite Plaintiff's First Deficiency Letter and the Second Deficiency Letter, and have not made a

meaningful production.

### III.    The Isley Defendants' Responses to Plaintiff's Interrogatories and Document Demands Concealed Material Information Related to the Identity of Highly Relevant Non-Party Witnesses[9]

On March 11, 2021, Reservoir made a supplemental document production (the "Reservoir

Production"), in response to Plaintiff's December 22, 2020 First Request for the Production of

---

[9] § III has been redacted pursuant to the February 2, 2021 Stipulated Confidentiality Agreement and Protective Order
(the "Protective Order") [Dckt. No. 63]. An unredacted copy has been filed pursuant to ¶ 10 of the Protective Order.

Documents to Reservoir (the "Reservoir FRPD"). As set forth below, the Reservoir Production included documents concerning non-party witnesses, Charap, Finkelstein, Geffen, and Barnes, all of whom requested finders' fees in connection with the Reservoir Transaction. This marks the first time that Plaintiff had any knowledge about Charap, Finkelstein and Geffen (and perhaps Barnes).

Reservoir's March 11, 2021 supplemental production included, *inter alia*, documents concerning Charap, Finkelstein, Geffen, and Barnes related to the Reservoir Transaction. A true and correct copy of a representative sample of these emails is annexed to the Epstein Decl. as Exhibit "L". Of course, the Isley Defendants should have disclosed the identities of these parties in their responses to Plaintiff's interrogatories and document disclosures, as required under the Fed.R.Civ.P. 26 and 34.

The Isley Defendants' omissions of non-party witnesses Charap, Finkelstein, Geffen, and Barnes in the Isley Rogs. and Isley FRPD are material and has obstructed discovery. For example, in the Reservoir Production, there are emails between Matt Finkelstein, Ross Charap and Rell Lafargue, Chief Operating Officer at Reservoir, **that show that the Isley Defendants used Finkelstein and Charap to broker an introduction to Reservoir and for consultation services, and that the Isley Defendants instructed Charap to seek payment from Reservoir**. In an email dated June 29, 2015, Charap stated:



*See Epstein Decl*. at ¶ 14 [Ex. L] [Reservoir Production Bate-stamped Nos. 922-923] (emphasis added).

There are several other emails discussing a "finder's fee" for Charap's and Finkelstein's introduction. *See, e.g.*, *id.* [Reservoir Production Bate-stamped Nos. 947, 3495, 3496]. In another email, Charap stated that:



*See id.* [Reservoir Production Bate-stamped No. 3548] (emphasis added); *id.* [Reservoir Production Bate-stamped Nos. 6529, 6530, 6531, 6532, 6533, 6550, 6551, 6552, 6553].

**Thus, the Isley Defendants should have identified Charap and Finkelstein in the Isley Rogs. because the Isley Defendants had instructed Charap to have Reservoir pay Charap for brokering the introduction and for consultation services**. *Id.* [Reservoir Production Bate-stamped No. 922-923].

The Isley Defendants also failed to identify two (2) additional parties, Jeremy Geffen and Courtney Barnes, that also provided consultation services to the Isley Defendants in the arrangement of the Reservoir Transaction. In the Reservoir Production, there are emails between Geffen and Lafargue, Chief Operating Officer at Reservoir, that show that the Isley Defendants used Geffen and Barnes for consultation services in the Reservoir Transaction.  In an email dated October 5, 2015, from Geffen to Lafargue, Geffen states, *inter alia*:



████████████████████████████

██ ████████████████████

*See id.* [Reservoir Production Bate-stamped No. 1086] (emphasis added).

Thus, the Isley Defendants should have identified Geffen and Barnes in the Isley Rogs. and the Isley FRPD. *See e.g. id.* [Reservoir Production Bate-stamped Nos. 922-923].

## **LEGAL ARGUMENT**

### I.      **Sanctions are Mandatory Under Fed.R.Civ.P. 26(g)(3)**

The Isley Defendants, and their counsel, violated their discovery obligations under Fed.R.Civ.P. 26(g) by certifying responses to the Isley FRPD and the Isley Rogs., which omitted material information concerning the identity of highly relevant non-party witnesses.

Sanctions are warranted under Fed.R.Civ.P. 26(b)(3). First, the Isley Defendants, and their attorneys, have failed to identify four (4) highly relevant non-party witnesses: Charap, Finkelstein, Geffen and Barnes. Second, the Isley Defendants never responded to Plaintiff's First Deficiency Letter (and the Second Deficiency Letter) that detailed the Isley Defendants' violations of Fed.R.Civ.P. 26. Third, Plaintiff had not even known about the existence of Charap, Finkelstein, Geffen (and perhaps Barnes), until the Reservoir Production, which obstructed Plaintiff's discovery efforts. Fourth, the Isley Defendants have not produced a meaningful amount of documents from Shukat, nor a meaningful privilege log. As set forth more fully below, sanctions are mandatory under Fed.R.Civ.P. 26(g).

Fed.R.Civ.P. 26(g) requires that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection **must be signed** by at least one attorney of record in the attorney's own name." Fed.R.Civ.P. 26(g)(1) (emphasis added).

11

"By signing a response to a discovery request, an attorney certifies that to the best of her 'knowledge, information, and belief formed after a reasonable inquiry,' the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose, such as to unnecessarily delay or needlessly increase the costs of litigation; and (3) reasonable given the importance of the issue and the circumstances of the case.'" *Markey v. Lapolla Indus., Inc*., 2015 WL 5027522, at *15 (E.D.N.Y. 2015), (*quoting Kiobel v. Royal Dutch Petroleum Co.*, 2009 WL 1810104, at *2 (S.D.N.Y. 2009) and Fed.R.Civ.P. 26(g)(1)).

"Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" *Kiobel*, 2009 WL 1810104 at *2 (quoting Fed.R.Civ.P. 26 advisory committee's note). The certification requirement "obliges each attorney to stop and think about the legitimacy of the discovery request, a response thereto, or an objection." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest, Employees Int'l Union*, 212 F.R.D. 178, 218-19 (S.D.N.Y. 2003) (quoting Fed.R.Civ.P. 26(g), advisory committee's note to 1983 Amendment). "[A]ll attorneys conducting discovery owe the court a heightened duty of candor." *Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, 2011 WL 3471508, at * 7 (E.D.N.Y. 2011).

"Pursuant to Rule 26(g)(3), if an attorney's certification violates Rule 26 without substantial justification, **sanctions are mandatory**." *Kiobel*, at *2 (quoting Fed.R.Civ.P. 26(g)(3)) (emphasis added). If sanctions are imposed, the "sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed.R.Civ.P. 26(g)(3).

## II.    Sanctions are Warranted under Fed.R.Civ.P. 37(c)(1)

Fed.R.Civ.P. 37(c) specifically provides that where a party without substantial justification fails to disclose required information, or to amend a prior response to discovery as required, the

Court may enter an order for monetary sanctions, including attorney's fees, in addition to any other appropriate sanctions. Fed.R.Civ.P. 37(c)(1).

As set forth in § I, *supra*, the Isley Defendants, and their attorneys failed, for months, without justification, to comply with their obligations to produce and supplement discovery required by Fed.R.Civ.P. 26(a) and (e).  Plaintiff has successfully established that the Isley Defendants, and their attorneys, have breached their discovery obligations, with a culpable state of mind, and that the belated disclosed evidence is highly relevant to the bona fides of the dispute. *See* pp. 10-12, *supra.*; *see also In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 131–32 (S.D.N.Y. 2007).

Nearly four (4) months after the service of Plaintiff's document demands, the Isley Defendants made their very first production of documents, under the threat of sanctions by the Court.  *See Epstein Decl*. at ¶ 13 [Ex. K] [Isley Defendants' Second Supplemental Responses]. Presumably because the Isley Defendants had not obtained a meaningful amount of email documents and time sheets from Shukat, the Isley Defendants production did not include any time sheets, barely any emails, and no emails concerning Charap, Finkelstein, Geffen and Barnes.  This is sanctionable.  *See Scottsdale Ins. Co. v. United Indus. & Constr. Corp.,* 2014 WL 12834839 (E.D.N.Y. 2014) (awarding sanctions and noting that belated compliance does not insulate a party from sanctions."); *see also Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp*., 602 F.2d 1062, 1068 (2d Cir. 1979) ("[P]laintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.").  This is stonewalling, and it should be sanctioned accordingly under Fed.R.Civ.P. 37(c).

Pursuant to Fed.R.Civ.P. 37(c), a court may impose sanctions in the event of a party's failure to disclose, to supplement an earlier response, "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). The party requesting sanctions under Rule 37 must show:

> (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011) (*citing In re September 11th*, 243 F.R.D. at 131–32.

The purpose of this Rule is to prevent the practice of "sandbagging" an opposing party with new evidence. *Borsanyi v. Huggins*, 2019 WL 4911188, at *6 (E.D.N.Y. 2019) (*citation omitted*). This is exactly why sanctions are warranted here. *See* pp. 10-12, *supra*.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion should be granted in its entirety, and an award of attorneys' fees, costs, and sanctions in an amount to be determined by the Court should be entered against the Isley Defendants and their attorneys, and the Court should respectfully enter an order compelling the production of supplemental responsive documents and interrogatory responses.

Dated:  New York, NY 10119
     March 22, 2021

LEVIN EPSTEIN & ASSOCIATES, P.C.

By:   */s/ Joshua D. Levin-Epstein*
    Joshua D. Levin-Epstein, Esq.
    60 East 42nd Street, Suite 4700
    New York, NY 10165
    Tel.: (212) 792-0046
    *Attorneys for Plaintiff*